IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | | |
|---|---|---|
| LINDA B. SANCHEZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 07-3007-CV-S-NKL-SSA |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER**

Pending before the Court is Plaintiff Linda B. Sanchez's Motion for Summary Judgment [Doc. # 10]. Sanchez seeks judicial review of the Commissioner's denial of her request for disability insurance benefits under Title II of the Social Security Act and for Supplemental Security Income under Title XVI of the Act. The Administrative Law Judge ("ALJ") found that Sanchez was not entitled to benefits, and such determination became the final decision of the Commissioner when the Appeals Council denied Sanchez's request for review. Sanchez has exhausted her administrative remedies, and jurisdiction is conferred on this Court pursuant to 42 U.S.C. § 405(g). The complete facts and arguments are presented in the parties' briefs and will be duplicated here only to the extent necessary.[1] Because the Court concludes that the ALJ failed to adequately

---

[1] Portions of the parties' briefs are adopted without quotation designated.

1

consider Sanchez's severe impairments as well as the opinion of her treating physician, this matter is remanded to Defendant for further consideration.

## I.  Factual Background

Linda Sanchez worked as a physical therapist in Springfield, Missouri, until becoming disabled as a result of carpal tunnel syndrome, cubital tunnel syndrome, depression, hypertension and headaches.  Starting in February 2000, Sanchez underwent four surgeries to correct pain and numbness in her hands.  First, Sanchez underwent carpal tunnel release surgery on her right hand on March 8, 2000.  (Tr. at 155.)  In November 2000, Sanchez underwent carpal tunnel release surgery on her left hand.  (Tr. at 193.)  And, in June 2001, Sanchez underwent surgery for left cubital tunnel[2] release. (Tr. at 192.)  Sanchez then underwent surgery for right cubital tunnel release in March 2003.  (Tr. at 189.)  Sanchez alleges disability as of March 1, 2003.

While she was undergoing surgeries, Sanchez sought treatment from Dr. Ted Clark.  In April 2002, Sanchez reported to Dr. Clark that she suffered from headaches. Again, on May 10, 2002, Sanchez reported to Dr. Clark because of a headache.  During treatment for uncontrolled hypertension and resulting headaches, Dr. Clark also diagnosed Sanchez with insomnia and depression.  (Tr. at 145; Tr. at 132; Tr. at 131.)  In June 2002, Dr. Clark indicated that Sanchez's headaches could be a result of narcotic withdrawal.  (Tr. at 140.)  Sanchez's relationship with Dr. Clark ended in March 2003 when Dr. Clark did not refill Sanchez's narcotic medication.  (Tr. at 120-121.)

---

[2] Cubital tunnel syndrome is an affliction whose symptoms include arm and hand pain as well as sensory and motor dysfunction.

2

In April 2003, Sanchez began therapy for continuing bilateral upper limb problems after surgery at Freeman Hospital. (Tr. at 165.) Comparative light touch testing revealed altered sensation for all fingers of both hands. Altered sensation was also noted for the dorsal ulnar hand, medial forearm, and right deltoid region. Clavicular compression and neck tilt maneuvers provoked multiple nerve paresthesia. The examiner noted that Sanchez suffered from right ulnar nerve sensitivity, which likely represented medial cord irritation suggesting Thoracic Outlet Syndrome. Sanchez reported wanting to return to gainful activity as soon as possible. The examiner concluded that Sanchez could return to work except she should avoid above waist arm positioning and stress. (Tr. at 167-168.)

On January 7, 2004, Dr. Silverberg, the doctor who performed Sanchez's surgeries, concluded that Sanchez would be able to lift, push, pull and carry ten pounds. (Tr. at 159.)

On April 6, 2004, Sanchez started receiving treatment from Dr. Stephen Theis at Sparta Health Clinic. Dr. Theis diagnosed Sanchez with ulnar neuropathy and hypertension. (Tr. at 172.) On August 31, 2004, Sanchez filed an application for Disability Insurance Benefits. (Tr. at 48-52.) At the request of Disability Determinations, Sanchez underwent an examination with Dr. James Godard on November 16, 2004. Dr. Godard noted that there was a decrease in tactile sensation in the distribution of the ulnar nerve bilaterally. Sanchez was diagnosed with chronic bilateral hand pain, hypertension and obesity. (Tr. at 174.)

On August 30, 2005, Dr. Theis diagnosed Sanchez with an adjustment disorder with anxiety, insomnia and hypertension. (Tr. at 185.) Sanchez continued treatment with Dr. Theis through November 2005. (Tr. at 184.) On December 1, 2005, Sanchez was told to go to the emergency room because of her high blood pressure.

Sanchez returned to Dr. Theis on February 16, 2006. She was again diagnosed with uncontrolled hypertension. (Tr. at 183.) When Sanchez reported to Dr. Theis on March 23, 2006, she was diagnosed with right shoulder pain and prescribed Vicodin. (Tr. at 181.)

On June 6, 2006, Dr. Theis concluded that Sanchez could not stoop for two hours a day, five days a week without difficulty; could not perform a job which required reaching, handling and fingering at least six hours a day because of complaints of persistent hand swelling with activity and would need to lie down to relieve pain every two hours for twenty to thirty minutes at a time. (Tr. at 223.)

On June 21, 2006, Sanchez appeared for a hearing in front of Administrative Law Judge Martin Speigel. Sanchez testified that she currently works 10-15 hours a week as a trainer at a gym, but that she is not able to use her hands for long periods of time, has problems carrying objects and also suffers from headaches, fatigue and pain in her lower back and hips. (Tr. at 245-256.) Sanchez also reported that she uses hot baths to help relieve pain. (Tr. at 253.) Sanchez also related that her four operations did not relieve her symptoms and that her joints continue to ache and lock because of arthritis. She also reported swelling and cramping. (Tr. at 257.) Sanchez testified that her headache pain

sometimes forced her to stay in bed for an entire day. Sanchez also testified that she struggles with depression. (Tr. at 255-256; Tr. at 258.)

Sanchez underwent a functional capacity evaluation on July 10, 2006. The evaluator found that Sanchez was able to lift 30 pounds; sit for 43 minutes; stand for 30 minutes; walk for 24 minutes; occasionally squat; and frequently reach, handle, bend and climb. (Tr. at 225.) The evaluator concluded that Sanchez provided a submaximal level of effort as evidenced by the inconsistencies noted during the testing procedure and the fact that her vitals did not elevate much above resting levels. (Tr. at 234-235.)

On September 25, 2006, the ALJ issued an unfavorable decision. The ALJ found that Sanchez suffered from severe impairments of cubital tunnel syndrome, carpal tunnel syndrome, disorder of the ulnar nerve and hypertension and headaches. (Tr. at 15.) The ALJ concluded that Sanchez would be able to lift and carry ten pounds frequently and twenty pounds occasionally; can sit, stand and walk without limitations; has limited ability to perform handling with either hand; and is unable to perform work that involves exposure to extreme cold or wetness. (Tr. at 18.) The ALJ then relied upon vocational expert testimony to determine that Sanchez is able to perform work as a hostess, usher or arcade attendant. (Tr. at 18.)

## II.   Discussion

To establish that she is entitled to benefits, Sanchez must show that she is unable to engage in any substantial gainful activity by reason of a medically determinable

impairment which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d) and § 1382c(a)(3)(A).

### A. The ALJ Failed to Identify All of Sanchez's Severe Impairments

Following the hearing, the ALJ issued a written opinion denying benefits in which he found that Sanchez had severe medical impairments including carpal tunnel syndrome, cubital tunnel syndrome, disorder of the ulnar nerve, and hypertension with headaches. (Tr. 15.) Despite the impairments diagnosed by Dr. Clark and testified to by Plaintiff, the ALJ did not find that Sanchez's depression was a "severe" impairment within the meaning of the Social Security regulations. (Tr. 15.)

In the Eighth Circuit, for an impairment not to be considered "severe" within the meaning of the Social Security regulations, it can have "no more than minimal effect on [a] claimant's ability to work." *Nguyen v. Chater*, 75 F.3d 429, 431 (8th Cir. 1996). In this case, Dr. Clark diagnosed Sanchez with depression and anxiety disorder, and Dr. Theis concluded that Sanchez suffered from adjustment disorder with anxiety. At her hearing, Sanchez testified that, at times, her depression prevents her from getting out of bed.

The ALJ noted that Sanchez has not sought counseling for her depression or been diagnosed with depression. The record shows she was diagnosed with both depression and anxiety. Given Sanchez's testimony that her depression sometimes prevents her from even getting out of bed, it was unreasonable for the ALJ to find that her failure to seek treatment for her depression meant the depression was not severe. Failure to get

6

treatment for depression, standing alone, does not mean the depression has no impact on a claimant's ability to work.

### B. The ALJ Failed to Assign Proper Weight to the Medical Evidence

In determining Sanchez's residual functional capacity, the ALJ concluded that Sanchez retained the ability to: lift and carry ten pounds frequently and twenty pounds occasionally; sit, stand and walk without limitations; and perform handling with either hand on a limited basis. The ALJ found that Sanchez was unable to perform work involving exposure to extreme cold or wetness. The ALJ based his assessment of Sanchez's abilities primarily on the reports of Dr. Godard and Dr. Silverberg.

A treating physician's opinion is generally given controlling weight. *Hacker v. Barnhart*, 459 F.3d 934, 937 (8th Cir. 2006). Dr. Theis was Sanchez's treating physician from April 2004 through March 2006. He concluded that Sanchez could not stoop for two hours a day, five days a week without difficulty; could not perform a job which required reaching, handling and fingering at least six hours a day because of reports of activity-induced hand swelling; and would need to lie down to relieve pain every two hours for 20 to 30 minutes at a time. In this case, the ALJ erred in failing to give Dr. Theis's opinion any weight whatsoever. As compared to Dr. Theis, the physicians upon whose reports the ALJ did rely examined Sanchez on a very limited basis. Considering the record as a whole, the ALJ has not provided an adequate explanation as to why Dr. Godard and Dr. Silverberg's conclusions are controlling. As a result, the ALJ erred in determining Sanchez's residual functional capacity.

## III. Conclusion

Accordingly, it is hereby

ORDERED that Sanchez's Motion for Summary Judgment [Doc. # 10] is GRANTED IN PART. The decision of the ALJ is REVERSED and the case is REMANDED for further consideration consistent with this ORDER.

 s/ Nanette K. Laughrey  
NANETTE K. LAUGHREY  
United States District Judge

Dated: August 9, 2007  
Jefferson City, Missouri